USDC SCAN INDEX SHEET

















SMV    2/1/06    10:03

3:05-CV-01362    FITZGERALD V. STATE FARM INS CO

*18*

*AMDCMP.*

CARLA DeDOMINICIS (SB#98952)_
Attorney at Law
326 E. Grand Avenue
Escondido, California 92025
(760) 480-0903 phone
(760) 480-2432 fax

FILED

2006 JAN 31  PM 4: 14

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

1
2
3
4
5
6
7
8

## UNITED STATE DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| BRENT FITZGERALD,<br>an individual,<br><br>              Plaintiff,<br>   v.<br><br>STATE FARM INSURANCE<br>COMPANY, INC., an Illinois<br>CORPORATION, and DOES 1<br>to 10, inclusive,<br><br>          Defendant. | Case No. 05CV1362L(BLM)<br><br>FIRST AMENDED<br>COMPLAINT FOR<br>DAMAGES |

Plaintiff, by his attorney, brings this action and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has determined on plaintiff's motion for remand that it has jurisdiction over all causes of action asserted herein pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

2.      Venue is proper in this Southern District of California because Plaintiff resides

18

in this jurisdiction, the insurance contract was made and was to be performed in this jurisdiction, and acts and omissions which form the basis of Plaintiff's claims herein occurred in San Diego County.

## THE PARTIES TO THE ACTION

3.      Plaintiff is informed and believes, and thereon alleges, defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY was erroneously sued as STATE FARM INSURANCE COMPANY, INC. (hereinafter "STATE FARM" and/or "defendant").  At all relevant times STATE FARM was an Illinois corporation with its principal place of business in the State of Illinois, authorized to engage in, and engaged in, the business of writing and selling automobile liability insurance in the State of California, as well as processing claims for benefits under such policies.

4.      Plaintiff BRENT FITZGERALD is an individual who presently resides in the City of Escondido, County of San Diego, State of California ("FITZGERALD").  On May 17, 2003, FITZGERALD received grave bodily injuries in a motor vehicle accident that occurred near the intersection of Highway 76 and Pauma Valley Road, as a result of the negligence of STATE FARM's insured Andrew W. Barclay ("Barclay").

5.      Plaintiff is unaware of the true names and capacities, whether corporate, associate, or otherwise, of the Defendants sued herein as DOES 1 to 10, inclusive, and therefore sues said defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to allege their true names and capacities when the same have been fully and finally ascertained.   Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a Doe, by reason of their standing and relationship to the remaining defendants, possesses an interest in the subject matter insurance contract, and by reason of

First Amended Complaint                          -2-                          05CV1362

their conduct, aided, assisted, and conspired to prevent the payment of insurance benefits and thereby caused the injuries and damages complained of.

6.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are or were the agents, servants and employees of each of their co-defendants, and at all times herein mentioned, were acting in the course and scope of said agency and employment, with the full knowledge, consent, permission and ratification of each of their co-defendants.

## THE UNDERLYING FACTS GIVING RISE TO THE LITIGATION

7.     On or about June 5, 2003, Fitzgerald brought suit against Barclay in an action known as *Fitzgerald v. Andrew W. Barclay*, docket number GIN030385, in the Superior Court of California, Count y of San Diego, North County Branch.

8.     At all times relevant, Barclay was insured for liability and supplemental coverages by STATE FARM under policy number 0049631123 for, among other things, damages and court costs caused by Barclay's use or operation of a motor vehicle on June 5, 2003, the day of his crash with FITZGERALD.  Said policy was in full force and effect at all times relevant.   A true and correct copy of the policy is attached as Exhibit 1.

9.     The language of the policy states that STATE FARM would not only indemnify Barclay for the $100,000 limits of the liability coverage, but that it would provide supplemental coverage as follows:

"In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident:

**"1.     Court costs of any suit for damages that we defend."** (Ex1: page 8)

A true and correct copy of the automobile policy by which STATE FARM was to

indemnify Barclay for liability and costs is attached as Exhibit 1.

10.    STATE FARM defended Barclay against FITZGERALD's suit for damages without any reservation of rights.    Following extensive discovery, in June 2004,  the state court lawsuit of *Fitzgerald v. Barclay* #GIN030385 culminated in a three-week jury trial during which both parties introduced testimony from lay and expert witnesses and incurred court reporter and jury fees.    On June 28, 2004, while the jury was deliberating its verdict, Brent Fitzgerald made an offer to dismiss the pending action against Barclay, in exchange for STATE FARM's payment to him on Barclay's behalf, of the $100,000 liability coverage; plus certain court costs, consisting of the following:

A.    All the Court Reporter fees that had been incurred in the suit for damages that STATE FARM defended;

B.    All the Jury fees that had been incurred in the suit that STATE FARM had defended;

C.    All the costs of the preparation of an edited version of a videotaped deposition, that the parties had prepared jointly in the suit that STATE FARM had defended; and

D.    A $2,000 cost incurred when the Court—at defendant's request and over plaintiff's objection—interrupted the testimony of plaintiff's medical expert and ordered him to return the next day in order to accommodate the schedule of the defendant's medical expert.  At the time of that order, plaintiff asked the Court to cause defendant to assume and pay that cost of the suit that STATE FARM had defended.  The Court reserved ruling on that request.

Those four costs totaled approximately $5,200.00.

At the time the offer was made, Fitzgerald had incurred an approximate $10,000 in additional costs pursuing the suit for damages against Barclay that STATE FARM defended, that he was not demanding in settlement.

11.     Plaintiff is informed and believes and on that basis alleges that Barclay demanded that STATE FARM pay Fitzgerald's June 28, 2004 offer to settle within policy limits.  Plaintiff is informed and believes and on that basis alleges that STATE FARM's retained counsel advised it to do so.  Within minutes of hearing that FITZGERALD had made an offer within the policy's coverage limits, and within minutes of Barclay's request and its attorney's advisement that the offer be accepted, STATE FARM flatly rejected Fitzgerald's offer out-of-hand.

12.     The jury that had been deliberating in *Fitzgerald v. Barclay* when the above-referenced offer to settle within policy limits was made could not reach a verdict.  But, during its deliberations, the jury unanimously found Barclay was negligent and had caused damages to Fitzgerald exceeding $1 million.  It deadlocked on the question of what percentage of fault Mr. Fitzgerald shared.  While a nine member consensus could not be reached among the panel members, ten jurors thought Fitzgerald's liability ranged from 0% to no more than 25%.

13.     A mistrial was declared by the state court following the jury's deadlock on June 28, 2004.  Fitzgerald's lawsuit against Barclay was set for retrial in October.

14.     On September 22, 2004, Fitzgerald made another offer to settle his action against Barclay for the sum of $379,999.00.  STATE FARM allowed that offer to lapse.  It did so notwithstanding the fact that STATE FARM had already rejected the June 28, 2004 offer to settle within policy limits that imposed liability on it for any subsequent excess

First Amended Complaint                     -5-                          05CV1362

judgment;  and notwithstanding  its knowledge that the deadlocked jury had unanimously found Barclay's liability clear,  Fitzgerald's damages at approximately $1 million, and Fitzgerald's fault at somewhere between zero and 25%.

15.     On October 19, 2004, following retrial, a newly constituted jury returned a verdict finding Barclay 100% responsible for Fitzgerald's damages of $917,674.00.  C.C.P. 998 pre-judgment interest was added to the judgment, bringing it to the gross amount of $937,283.98.   Costs of the suit against Barclay that STATE FARM defended were awarded in the amount of $31,527.17, including each of the costs set forth in the June 28, 2004 offer, *infra*, paragraph 10.   Interest is accuring on that judgment at the rate of 10 percent per annum until satisfaction of judgment.    On October 28, 2004 judgment was entered.  A true and correct copy of the judgment is attached, marked as Exhibit 2, and incorporated by reference.

16.     On February 7, 2005, Barclay filed a Chapter 7 Bankruptcy Case in the United States Bankruptcy Court, Central District of California, in a petition numbered LA-05-12345.

17.     On February 11, 2005, STATE FARM paid to Fitzgerald on behalf of Barclay, the $100,000 liability coverage, and $31,527.17 supplemental cost coverage, including each of the costs set forth in the June 28, 2004 offer, *infra*, paragraph 10.      Notwithstanding it's June 28, 2004 pre-judgment refusal to accept Fitzgerald's offer to settle for $100,000 liability coverage and some $5,200 supplemental cost coverage, and notwithstanding its legal obligation to now pay the extra-policy judgment established by California's rule of law established by *Crisci v. Security Insurance Co.* (1967) 66 Cal. 2d 425 and *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 237,  STATE FARM has refused, and continues to refuse,  to pay the $837,283.98 balance of the judgment against Barclay and its accrued interest.

18.    On March 3, 2005, through their respective attorneys,  FITZGERALD and

Barclay entered into a stipulation for relief from the automatic stay that existed pursuant to 11

USC section 362.    A true and correct copy of the entire stipulation is attached as Exhibit 3.

In a section entitled "**Factual Background**", the stipulation recited that:

> "Fitzgerald asserts a claim against Debtor based upon the judgment in the State
>
> Court Action.  Debtor has insurance coverage acknowledged by his insurance carrier
>
> to pay a portion of the verdict.   Fitzgerald believes that due to conduct of the
>
> insurance carrier during the trial in the State Court action that Fitzgerald may be
>
> entitled to recover the entire amount of the verdict from the insurance carrier
>
> notwithstanding any limits claimed by the insurance carrier." (Ex.3:16)

Because Barclay was willing to stipulate to relief from the automatic stay in

favor of Fitzgerald, the stipulation further recited that:

> "...The debtor agrees to relief from the automatic stay being granted in favor of
>
> Fitzgerald to allow Fitzgerald to proceed with enforcement of the verdict arising from
>
> the State Court Action against applicable insurance proceeds only, or any other claims
>
> FITZGERALD may have against Debtor's insurance carrier, to the extent that such
>
> claims are not assets of the Chapter 7 estate."  (Ex.3:17)

19.    On March 21, 2005, the United States Bankruptcy Court entered an order

granting Fitzgerald relief from the automatic stay to permit him to enforce his final judgment

by collection upon Barclay's insurance in accordance with non-bankruptcy law. A true and

correct copy of the Court order is attached as Exhibit 4.  The order stated that the relief from

stay specifically affected the non-bankruptcy case in the Superior Court of California, County

of San Diego, known as *Fitzgerald v. Barclay*, GIN 030385. (Ex. 4:19)

First Amended Complaint                          -7-                          05CV1362

20.     On March 30, 2005, the Trustee of Barclay's estate filed a report of trustee. A true and correct copy of the report of trustee is attached as Exhibit 5. The trustee declared Barclay's a "no asset" estate. (Ex. 5:23)

21.     On April 1, 2005,  pursuant to his stipulation with Barclay and in accordance with the Bankruptcy Court order, Fitzgerald filed a complaint for STATE FARM's failure to pay insurance benefits in *Fitzgerald v. Barclay*, GIN 030385  against Defendant STATE FARM.   That action was filed originally in the San Diego Superior Court, County of San Diego, known as  *Fitzgerald v. STATE FARM*, GIN 043529. By it, Fitzgerald  sought to collect the balance of the extra-policy verdict  pursuant to *Crisci v. Security Insurance Co.* (1967) 65 Cal.2d 425 and California Insurance Code 11580(b)(2).

22.     On July 5, 2005, STATE FARM removed Fitzgerald's state court action against it to this court, and filed a motion to dismiss on the grounds that as a judgment creditor Fitzgerald is barred from filing an Insurance Code 11580(b)(2) action against it to enforce the quasi-contractual covenants of good faith and fair dealing within Barclay's insurance STATE FARM policy.  STATE FARM's motion to dismiss relied on *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943, which stands for, among other things, the proposition that the covenant of good faith and fair dealing that State Farm owed to Barclay, must be assigned to Fitzgerald, to permit Fitzgerald to enforce it.

23.     On or about August 10, 2005, Fitzgerald and Andrew W. Barclay entered a "followup to that certain stipulation entered between them on March 3, 2005" (supra, paragraph 17) , entitled "*stipulation and partial assignment*"    A true and correct copy of the stipulation and partial assignment is attached as Exhibit 6.

By that agreement, Fitzgerald and Barclay signed a writing agreeing  that:

"1.     Andrew W. Barclay now and forever assigns to Brent Fitzgerald

Barclay's contractual damages only from his chose of actions that arose from STATE

FARM's unreasonable rejection of an offer to settle, pursuant to *Crisci v. Security*

*Insurance Co.* (1967) 66 Cal. 2d 425 and *Samson v. Transamerica Ins. Co.* (1981) 309

Cal.3d 220, 237, limited to the right to recover the balance of the final judgment plus

interest as accrued pursuant to law."  (Ex. 6:24)

"2.     That Brent Fitzgerald acknowledges that in so doing, Andrew W.

Barclay has retained all his rights to pursue tortious damages from Barclay's choses of

action that arise from STATE FARM's unreasonable rejection of an offer to settle,

pursuant to *Crisci v. Security Insurance Co.* (1967) 66 Cal.2d 425 and *Samson v.*

*Transamerica Ins. Co.* (1981) 309 Cal.3d 220, 237, including but not limited to

damages for emotional distress, personal injury damages and punitive damages."  (Ex.

6-25)

24.     Fitzgerald has advised STATE FARM through its counsel that he has

been assigned Barclay's rights to contractual damages from its breach of its duty to

settle.  Although due demand has been made by plaintiff to STATE FARM for the

balance of the judgment in the amount of $837,283.98 plus interest at 10% from

October 28, 2004, defendants and each of them refused and continue to refuse to pay

the balance of the judgment, or any further part thereof.    STATE FARM has

disclaimed any liability for the balance of the judgment.

## FIRST CAUSE OF ACTION

### (Bad Faith Failure to Settle Case within Policy Limits)

25.     As a proximate result of the defendant's failure and refusal to accept

First Amended Complaint                        -9-                        05CV1362

Fitzgerald's settlement offers, Barclay suffered, among other things, contractual damages that Barclay assigned to Fitzgerald; and for which Fitzgerald as Barclay's assignee, brings this action to recover.

26.     Defendant STATE FARM has breached its duty of good faith and fair dealing owed to Barclay that is now assigned to Fitzgerald in the following respects:

(a)     Failing to accept Fitzgerald's June 28, 2004 good faith settlement offer within policy limits in light of Barclay's liability and Fitzgerald's catastrophic injuries and losses, and instead making an unwarranted refusal to pay $5,200 in costs notwithstanding the policy's supplemental cost coverage.

(b)     Rejecting the advice of its own attorneys to accept Fitzgerald's June 28, 2004 good faith settlement offer within policy limits, and instead making an unwarranted refusal to pay $5,200 in costs.

(c)     Failing to honor its insured's request that it accept Fitzgerald's June 28, 2004 good faith settlement offer within policy limits, and instead making an unwarranted refusal to pay $5,200 in costs.

(d)     Not attempting in good faith to effectuate a prompt, fair and equitable settlement of the liability and cost claims when liability, damages and costs were reasonably certain.

(e)     Failing to accept Fitzgerald's September 22, 2004 good faith compromise offer of $379,999.00 after it had rejected a previous offer to settle within policy limits.  Instead, it forced the matter to retrial knowing the first jury had unanimously found Barclay's liability clear; Fitzgerald's damages at approximately $1 million; and Fitzgerald's comparative fault at a maximum

25%.

(f)    In evaluating the offers of settlement by Fitzgerald, STATE FARM failed to take into account and give at least as much consideration to the interest of Barclay, he insured, as it gave to its own interests. At those times, there was a great risk of recovery beyond the policy limits and the most reasonable manner of disposing of the claim was to accept each offer when it was made.

(g)    Plaintiff is informed and believes and thereon alleges that defendant breached the duty of good faith and fair dealing in other respects which plaintiff is not presently aware. When ascertained, plaintiff will seek leave to amend this first amended complaint, accordingly.

27.    As a proximate result of the aforementioned wrongful conduct of defendants, Barclay was entitled to bring an action for the breach of the covenants of good faith and fair dealing for his own benefit, to recover the balance between the judgment assessed against him and the insurance coverage, which amount equals $837,283.98 plus interest at 10% from October 28, 2004. Fitzgerald sues in his stead as his assignee, seeking those contractual damages from Barclay's chose of action that arises that arose from STATE FARM's unreasonable rejection of an offer to settle, pursuant to *Crisci v. Security Insurance Co.* (1967) 66 Cal. 2d 425 and *Samson v. Transamerica Ins. Co.* (1981) 309 Cal.3d 220, 237.

WHEREFORE, plaintiff prays judgment against defendants and each of them for:

1.    For compensatory damages in an amount according to proof at trial, in an amount not less than $837,283.98.

2.    For interest thereon from October 28, 2004 in the amount of 10% per annum;

3.    For costs of suit incurred;

4.      For such other and further relief as the court may deem proper.

Dated:   January 24, 2006

CARLA DeDOMINICIS, Attorney
for Plaintiff BRENT FITZGERALD

**First Amended Complaint**                                   -12-                                   **05CV1362**

## CERTIFICATE

I, the undersigned, do hereby certify that I am custodian of the records pertaining to the issuance of policies by the L. A. Valley Division of State Farm Mutual Automobile Insurance Company of Bloomington, Illinois.

I further certify that the attached policy, number L02 1025-C15-75A, is a copy of the policy issued to Barclay, Andrew of 3230 Overland Ave. Apt. 301, Los Angeles, CA 90034-3523 together with endorsements issued subsequently and effective as follows based on our available records:

6905A AMENDMENT OF DEFINED WORDS, LIABILITY, MEDICAL PAYMENTS, UNINSURED MOTOR VEHICLE AND PHYSICAL DAMAGE COVERAGES-EFFECTIVE DATE 03-15-03.

This policy was in effect on the loss date of May 17, 2003.

September 19, 2003
Westlake Village, CA

Carol Blough
Underwriting Administrator

RECEIVED
SEP 2 4 2003
SAN MARCOS S/C

# EXHIBIT `A´

01



| | State Farm Mutual Automobile Insurance Company | 14020-1-G | MUTL VOL |
|---|---|---|---|
| | 31303 Agoura Road | | |
| | Westlake Village CA 91363 | **DECLARATIONS PAGE** | |

| POLICY NUMBER | Policy Period from SEP 15 2001 to MAR 15 2002 | STATE FARM PAYMENT PLAN NUM |
|---|---|---|
| L02 1025-C15-75A | | 0049631123 |

NAMED INSURED

           75-1199-1  G

BARCLAY, ANDREW
3230 OVERLAND AVE APT 301
LOS ANGELES CA 90034-3523

DO NOT PAY PREMIUMS SHOWN ON THIS PAGE
SEPARATE STATEMENT ENCLOSED IF AMOUNT D

AGENT

JOHN J CAPPILLA INS AGENCY INC
21241 VENTURA BL SUITE 160
WOODLAND HILLS, CA 91364-2120

PHONE: (818)340-4221 or (888)502-2774

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|---|---|---|---|---|---|
| 1994 | OLDSMOBILE | CUTLASS | 4DR | 1G3AG55M1R6377584 | 6B00CV11 |

| SYMBOLS | COVERAGES | | PREMIUMS |
|---|---|---|---|
| | See policy for coverage details. | | 1994 |
| | | | OLDSMOBILE |
| A | Bodily Injury/Property Damage Liability | | $288.16 |
| | Limits of Liability-Coverage A-Bodily Injury | | |
| | $100,000    $300,000 | | |
| | Property Damage Liability-Coverage A-Property Damage | | |
| | Each Accident | | |
| C | Medical Payments | | $36.55 |
| | Limits of Liability-Coverage C | | |
| | Each Person | | |
| D250 | $250 Deductible Comprehensive | | $29.17 |
| R1 | Car Rental/Travel Expenses | | $10.72 |
| | Limits of Liability-Rental/Travel Expenses | | |
| | Each Day    Each Occurrence | | |
| U | Uninsured Motor Vehicle | | $105.25 |
| | Limits of Liability-Coverage U | | |
| | Each Person, Each Accident | | |
| | $100,000    $300,000 | | |
| U1 | Uninsured Motor Vehicle Property Damage | | $3.43 |

Total Premium for the policy period  $480.31

**IMPORTANT MESSAGES**

Your policy consists of this declarations page, the policy booklet - form 9805A, and any endorsements that apply, including those issued to you with any subsequent renewal notice.

Replaced policy number L021025-75.

New Policy Form

**EXCEPTIONS AND ENDORSEMENTS**

6091J.1  CERTIFICATE OF GUARANTEED RENEWAL
6893PP   AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES.

Agent:    JOHN J CAPPILLA INS AGENCY INC

Telephone: (818)340-4221

Prepared   SEP 14 2001      1199-771

02

PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE.  (SEE "REPORTING A CLAIM-INSURED'S DUTIES" IN THIS POLICY.)

Authorized Representative



State Farm Mutual Automobile Insurance Company, Home Office, Bloomington, Illinois
The address of the Regional Office issuing this policy is shown at the top of the Declarations Page.

# YOUR
# STATE FARM
# CAR
# POLICY

**WARNING**

Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.

California
Policy Form 9805A

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
### BLOOMINGTON, ILLINOIS
### A MUTUAL COMPANY

### DEFINED WORDS
### WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

*Bodily Injury* – means bodily injury to a *person* and sickness, disease or death which results from it.

*Car* – means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include:

1. any vehicle while located for use as a dwelling or other premises; or

2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* – means a business or job where the purpose is to test, road test, sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* – means the *person, persons* or organization defined as *insureds* in the specific coverage. If the information *you* have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled **Premium** of the Conditions section of this policy.

*Loss* – defined in Sections IV and V.

*Newly Acquired Car* – means a *replacement car* or an *additional car*.

*Replacement Car* – means a *car* newly owned by or newly leased to *you* or *your spouse* that replaces *your car*. This policy will only provide coverage for the *replacement car* if *you* or *your spouse*:

1. ask us to insure it within 30 days after its delivery to *you* or *your spouse*; and

2. pay us any added amount due.

*Additional Car* – means an added *car* newly owned by or newly leased to *you* or *your spouse*. This policy will only provide coverage for the *additional car* if:

1. it is a *private passenger car* and we insure all other *private passenger cars*; or

2. it is other than a *private passenger car* and we insure all *cars*

owned by or leased to *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

This policy provides coverage for the *additional car* only until the earlier of:

1. 12:01 A.M. Standard Time at the address shown on the declarations page on the 31st day after the delivery of the *car* to *you* or *your spouse*; or

2. the effective date and time of a policy issued by us or any other company that describes the *car* on its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage not otherwise provided for the *newly acquired car*. If such coverage is provided by this paragraph, it will apply only until 12:01 A. M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse*. Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* – means a *car* not owned by, registered to or leased to:

1. *you, your spouse*;

2. any *relative* unless at the time of the accident or *loss*:

   a. the *car* currently is or has within the last 30 days been insured for liability coverage; and

2
9805A

64

b. the driver is an *insured* who does not own or lease the *car*;

3. any other *person* residing in the same household as *you*, *your spouse* or any *relative*; or

4. an employer of *you*, *your spouse* or any *relative*.

*Non-owned car* does not include a *car* which has been operated or rented by or in the possession of an *insured* during any part of each of the last 21 or more consecutive days. If the *insured* is an *insured* under one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

A *non-owned car* must be a *car* in the lawful possession of the *person* operating it.

*Occupying* – means in, on, entering or alighting from.

*Person* – means a human being.

*Private Passenger Car* – means a *car*:

1. with four wheels;

2. of the private passenger or station wagon type; and

3. designed solely to carry *persons* and their luggage.

*Relative* – as used in Sections I, II, IV and V means a *person* related to *you* or *your spouse* by blood,

marriage or adoption who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school.

As used in Section III, *relative* means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you* or *your spouse*. It includes *your* unmarried and unemancipated child away at school.

*Spouse* – as used in Sections I, II, IV and V means *your* husband or wife who resides primarily with *you*.

As used in Section III, *spouse* means *your* husband or wife.

*Temporary Substitute Car* – means a *car* not owned by, registered to or leased to *you* or *your spouse*, if it replaces *your car* for a short time. Its use has to be with the consent of the owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or *loss*. A *temporary substitute car* is not considered a *non-owned car*.

*Utility Vehicle* – means a motor vehicle with:

1. a pickup, panel or van body; and

2. a Gross Vehicle Weight of 10,000 pounds or less.

*You* or *Your* – means the named *insured* or named insureds shown on the declarations page.

*Your Car* – means the *car* or the vehicle described on the declarations page.

## DECLARATIONS CONTINUED

We, the State Farm Mutual Automobile Insurance Company, agree to insure *you* according to the terms of this policy based:

1. on *your* agreement to pay the required premium for the coverages *you* chose; and

2. in reliance on *your* statements in these declarations.

*You* agree by acceptance of this policy that:

1. the statements in these declarations are *your* statements and are true; and

2. we insure *you* on the basis *your* statements are true; and

3. this policy contains all of the agreements between *you* and us or any of our agents.

Unless otherwise stated in the exceptions space on the declarations page, *your* statements are:

1. Ownership. *You* are the sole owner of *your car*.

2. Insurance and License History. Neither *you* nor any member of *your* household within the past three years has had:

a. vehicle insurance canceled by an insurer or

b. a license to drive or vehicle registration suspended, revoked or refused.

3. Use. *Your car* is used for pleasure and business.

3
9805A

υ5

# WHEN AND WHERE COVERAGE APPLIES

## When Coverage Applies

The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

## Where Coverage Applies

The coverages *you* chose apply:

1. in the United States of America, its territories and possessions or Canada; or

2. while the insured vehicle is being shipped between their ports.

The liability, medical payments, uninsured motor vehicle and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

Death, dismemberment and loss of sight, total disability and loss of earnings coverages apply anywhere in the world.

# FINANCED VEHICLES

If a creditor is shown in the declarations, we may pay any comprehensive or collision *loss* to:

1. *you* and, if unpaid, the repairer; or

2. *you* and such creditor, as its interest may appear, when we find it is not practical to repair *your car*; or

3. the creditor, as to its interest, if *your car* has been repossessed.

When we pay the creditor for *loss* for which *you* are not covered, we are entitled to the creditor's right of recovery against *you* to the extent of our payment. Our right of recovery shall not impair the creditor's right to recover the full amount of its claim.

The coverage for the creditor's interest only is valid until we terminate it. We will not terminate such coverage because of:

1. any act or negligence of the owner or borrower; or

2. a change in the ownership or interest unknown to us, unless the creditor knew of it and failed to tell us within 10 days; or

3. an error in the description of the vehicle.

The date of termination of the creditor's interest will be at least 20 days after the date we mail or electronically transmit the termination notice.

# REPORTING A CLAIM — INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible. The notice must give us:

   a. *your* name; and

   b. the names and addresses of all *persons* involved; and

   c. the hour, date, place and facts of the accident or *loss*; and

   d. the names and addresses of witnesses.

2. **Notice to Us of Claim or Suit**

   If a claim or suit is made against an *insured,* that *insured* must at once send us every demand, notice or claim made and every summons or legal process received. That *insured* also shall answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

3. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss, you* or the owner of the property also shall:

a. make a prompt report to the police when the *loss* is the result of theft or larceny.

b. protect the damaged vehicle. We will pay any reasonable expense incurred to do so.

c. show us the damage, when we ask.

d. provide all records, receipts and invoices, or certified copies of them. We may make copies.

e. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

4. **Other Duties Under Medical Payments, Uninsured Motor Vehicle, Death, Dismemberment and Loss of Sight, Total Disability and Loss of Earnings Coverages**

Any *person* who suffers a *bodily injury* which results in a medical payments coverage claim must notify us of the claim in writing as soon as reasonably possible, after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

The *person* making claim also shall:

a. under the medical payments, uninsured motor vehicle, death, dismemberment and loss of sight, total disability and loss of earnings coverages:

(1) give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

(2) be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

(3) answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

b. under the uninsured motor vehicle coverage:

(1) report a "hit-and-run" accident to the police within 24 hours and to us within 30 days.

(2) let us see the insured *car*, the *person* occupied in the accident.

(3) send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

c. under the death, dismemberment and loss of sight, total disability and loss of earnings coverages, give us proof of claim on forms we furnish.

d. under uninsured motor vehicle property damage coverage report the accident to us within 30 days.

5. **Insured's Duty to Cooperate With Us**

a. The *insured* shall cooperate with us and, when asked, assist us in:

(1) making settlements;

(2) securing and giving evidence;

(3) attending and getting witnesses to attend, hearings and trials.

b. The *insured* shall not, except at his or her own cost, voluntarily:

(1) make any payment or assume any obligation to others; or

(2) incur any expense, other than for first aid to others.

9803A

# SECTION I — LIABILITY — COVERAGE A

*You* have this coverage if "A" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use,

   caused by accident resulting from the ownership, maintenance or use of *your car;* and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. WE WILL NOT DEFEND ANY SUIT:

   a. AFTER WE HAVE PAID THE AP-PLICABLE LIMIT OF OUR LI-ABILITY FOR THE ACCIDENT WHICH IS THE BASIS OF THE LAWSUIT; OR

   b. IF THERE IS NO COVERAGE UN-DER THE POLICY.

In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident.

1. Court costs of any suit for damages that we defend.

2. Interest on damages owed by the *insured* due to a judgment and accruing:

   a. after the judgment, and until we pay, offer or deposit in court, the amount due under this coverage; or

   b. before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage, but only on that part of the judgment we pay;

3. Premiums or costs of bonds:

   a. to secure the release of an *insured's* property attached under a court order;

   b. required to appeal a decision in a suit for damages if we have not paid our limit of liability that applies to the suit; and

   c. up to $250 for each bail bond needed because of an accident or related traf-fic law violation.

We have no duty to furnish or apply for any bonds. The amount of any bond we pay for shall not be more than our limit of liability.

4. Expenses incurred by an *insured:*

   a. for loss of wages or salary up to $100 per day if we ask the *insured* to attend the trial of a civil suit.

   b. for first aid to others at the time of the accident.

   c. at our request.

We have the right to investigate, negotiate and set-tle any claim or suit.

**Coverage for the Use of Other Cars**

The liability coverage extends to the use, by an *in-sured,* of a *newly acquired car,* a *temporary sub-stitute car* or a *non-owned car.*

**Who Is an Insured**

When we refer to *your car, a newly acquired car* or a *temporary substitute car, insured* means:

1. *you;*

2. *your spouse;*

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse;* and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds.*

When we refer to a *non-owned car, insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse;*

3. their *relatives;* and

4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons.*

THERE IS NO COVERAGE FOR *NON-OWNED* CARS:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

6
9805A

2. WHILE

  a.  BEING REPAIRED, SERVICED OR USED BY, ANY PERSON, WHILE THAT PERSON IS WORKING IN ANY CAR BUSINESS; or

  b.  USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or occupied by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

## Trailer Coverage

The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

  Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

  These trailers are not described in the declarations and no extra premium is charged.

2. the following trailers only if they are described on the declarations page and extra premium is paid:

  a.  trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

    (1) if designed to carry *persons*; or

    (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium is paid); or

    (3) while used as premises for office, store or display purposes; or

  b.  trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

When we refer to trailer coverage, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

## Limits of Liability

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

The amount of property damage liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Property Damage, Each Accident".

We will pay damages for which an *insured* is legally liable up to these amounts.

The limits of liability are not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

The liability coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage.

## When Coverage A Does Not Apply

In addition to the limitations of coverage in Who Is an Insured and Trailer Coverage:

THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

  a.  RENTED OR LEASED TO OTHERS.

  b.  USED TO CARRY PERSONS FOR A CHARGE. This does not apply to the use on a share-expense basis of:

    (1) a *private passenger car*; or

7
98054

(2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

c. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

(1) *you* or *your* spouse;

(2) any *relative*;

(3) any resident of *your* household; or

(4) any agent, employee or partner of *you*, *your* spouse, any *relative* or such resident.

This coverage is *excess* for (3) and (4) above.

2. FOR ANY *BODILY INJURY* TO:

a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. *You* and *your* spouse are covered for such injury to a fellow employee.

b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is neither covered nor required to be covered under any workers' compensation insurance.

3. FOR:

a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN THE CHARGE OF OR TRANSPORTED BY AN *INSURED*, INCLUDING A VEHICLE OPERATED BY AN *INSURED*. But coverage applies to a rented:

a. residence; or

b. private garage

damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKERS' COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

7. FOR *BODILY INJURY* TO ANY *INSURED*.

## If There Is Other Liability Coverage

1. Policies Issued by Us to You, Your Spouse, or Any Relative

If two or more vehicle liability policies issued by us to *you*, *your* spouse, or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

2. Other Liability Coverage Available From Other Sources

Subject to item 1, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

3. Temporary Substitute Car, Non-Owned Car, Trailer

Subject to items 1 and 2, if a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle*:

a. has other vehicle liability coverage on it; or

b. is self-insured under any motor vehicle financial responsibility law, a *motor carrier* law or any similar law,

then this coverage is excess over such insurance or self-insurance.

4. Newly Acquired Car

THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON A *NEWLY ACQUIRED CAR*.

## Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law

1. Out-of-State Coverage

If an *insured* under the liability coverage is in another state or Canada and, as a nonresident,

8.
9805A

becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a.  the policy will be interpreted to give the coverage required by the law; and

b.  the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

2.  **Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

# SECTION II — MEDICAL PAYMENTS — COVERAGE C

*You* have this coverage if "C" appears in the "Coverages" space on the declarations page.

**Medical Expenses**

We will pay reasonable medical expenses incurred for *bodily injury* caused by accident, for services furnished within three years of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices.

REASONABLE MEDICAL EXPENSES DO NOT INCLUDE EXPENSES:

1.  FOR TREATMENT, SERVICES, PRODUCTS OR PROCEDURES THAT ARE:

    a.  EXPERIMENTAL IN NATURE FOR RESEARCH, OR NOT PRIMARILY DESIGNED TO SERVE A MEDICAL PURPOSE; OR

    b.  NOT COMMONLY AND CUSTOMARILY RECOGNIZED THROUGHOUT THE MEDICAL PROFESSION AND WITHIN THE UNITED STATES AS APPROPRIATE FOR THE TREATMENT OF THE *BODILY INJURY*; OR

2.  INCURRED FOR:

    a.  THE USE OF THERMOGRAPHY OR OTHER RELATED PROCEDURES OF A SIMILAR NATURE; OR

    b.  THE PURCHASE OR RENTAL OF EQUIPMENT NOT PRIMARILY DESIGNED TO SERVE A MEDICAL PURPOSE.

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

Services are necessary only if the services are rendered by a medical provider within the legally authorized scope of the provider's practice and are essential in achieving maximum medical improvement for the *bodily injury* sustained in the accident.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

The *bodily injury* must be discovered and treated within one year of the date of the accident.

**Persons for Whom Medical Expenses Are Payable**

We will pay medical expenses for *bodily injury* sustained by:

1.  a.  the first *person* named in the declarations;

9805A

11

E D

Clerk of the Superior Court

OCT 2 8 2004

BY: SUSAN SMITH

1

2

3

4

5

6              **IN THE SUPERIOR COURT OF CALIFORNIA,**

7        **COUNTY OF SAN DIEGO, NORTH COUNTY BRANCH**

8

| | | |
|---|---|---|
| BRENT FITZGERALD | ) | Case No. GIN 030385 |
| an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGMENT ON |
| v. | ) | SPECIAL VERDICT |
| | ) | |
| ANDREW W. BARCLAY, | ) | |
| an individual | ) | |
| | ) | |
| Defendants. | ) | |

16      This matter came on regularly for trial on October 1, 2004, in Department 25 of the

17 above-entitled court, the Honorable Harry Elias, Judge presiding with a jury. The plaintiff

18 Brent Fitzgerald was present and represented by attorney Carla DeDominicis. The defendant

19 Andrew W. Barclay was represented by Randall Winet, of the law firm of Winet, Patrick and

20 Weaver.

21      A jury of twelve individuals and two alternates was regularly impaneled and sworn.

22      Witnesses were sworn and called to testify; documentary and other exhibits were

23 offered and received in evidence; and the jury was duly instructed by the Court. After

24 arguments of counsel, the cause was submitted to the jury with directions to return a verdict

25 on special issues. The jury deliberated and thereafter returned into court with its verdict

26 consisting of the special issues submitted to the jury and the answers given thereto by the jury

27 which said verdict was in words and figures as follows, to wit:

28

12

We answer the questions submitted to us as follows:

1.  Was Andrew W. Barclay negligent?

    _XX_ Yes                   ___ No

    If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.  Was Andrew W. Barclay's negligence a substantial factor in causing harm to Brent Fitzgerald?

    _XX_ Yes                   ___ No

    If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  What are Brent Fitzgerald's total damages? Do not reduce the damages based on the fault, if any, of Brent Fitzgerald.

    a.  Past economic loss, including lost earnings and medical expenses:          $   275,670.00

    b.  Future economic loss, including lost earnings and medical expenses:        $   162,004.00

    c.  Past noneconomic loss, including physical pain and mental suffering:       $   180,000.00

    d.  Future noneconomic loss, including physical pain and mental suffering:     $   300,000.00

                                                    TOTAL   $   917,674.00

    If Brent Fitzgerald has proved any damages, then answer question 4. If Brent Fitzgerald has not proved any damages, then stop here, answer no further questions, and have the presiding juror sign and date this form.

4.  Was Brent Fitzgerald negligent?

    ___ Yes                    _XX_ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.    Was Brent Fitzgerald's negligence a substantial factor in causing his harm?

___Yes                    ___No

If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6.    What percentage of responsibility for Brent Fitzgerald's harm do you assign to:

| | | |
|---|---|---|
| Andrew W. Barclay: | 100 | % |
| Brent Fitzgerald: | ____ | % |
| TOTAL | 100 | % |

Dated: October 19, 2004              Signed: _____

Presiding Juror

GOOD CAUSE APPEARING, by reason of the special verdict that plaintiff Brent Fitzgerald is entitled to judgment against Andrew W. Barclay, in the amount of $917,674.00

NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

That plaintiff Brent Fitzgerald have judgment against defendant Andrew W. Barclay for damages in the sum of $917,674.00; plus interest thereon pursuant to C.C.P. 998 and C.C. 3291, at the rate of 10 percent per annum from August 2, 2003, to October 19, 2004, the date the verdict was rendered in the sum of $19,609.98,  for a total sum of $937,283.98.

Interest at 10 percent per annum shall continue to accrue on the total sum of $937,283.98 from October 19, 2004, until satisfaction of judgment.

Plaintiff Brent Fitzgerald further recovers from defendant Andrew W. Barclay, costs and disbursements taxed in the sum of  $32,888.17.

Dated:  October 28, 2004

# HARRY M. ELIAS

_____

JUDGE OF THE SUPERIOR COURT

-3-

FILED

1  JUDITH A. DESCALSO (Cal. Bar No. 103211)
2  Attorney at Law
   960 Canterbury Pl., Ste. 340
3  Escondido, CA 92025
4  (760) 745-8380 phone
   (760) 860-9800 fax
5

6

7  Attorney for Creditor
   BRENT FITZGERALD
8

2005 MAR 15  PM 1:14

9               UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  In Re:                        )
                                  )    Case No. LA 05-12345-MT
13  ANDREW W. BARCLAY,            )
                                  )    STIPULATION FOR RELIEF
14                                )    FROM AUTOMATIC STAY
                   Debtor.        )
15                                )
                                  )
16  _____)

17

18         This Stipulation is made and entered into by and between Debtor, ANDREW W.

19  BARCLAY (hereafter Debtor) and BRENT FITZGERALD (hereafter FITZGERALD),

20  by and through their respective counsel, and is made with reference to the following

21  facts:

22

23                        FACTUAL BACKGROUND

24         A. FITZGERALD seeks relief from the automatic stay to proceed against certain

25  insurance proceeds that may be recoverable by FITZGERALD as a result of that certain

26  State Court judgment in the Superior Court of California, County of San Diego, bearing

27  Case No. GIN 030385 and identified as Fitzgerald v. Barclay (State Court Action).  Said

28

ORIGINAL

15

judgment is based on a jury verdict (the verdict) against Debtor for recovery by

FITZGERALD for damages sustained in an automobile accident.

     B.  On or about February 7, 2005, Debtor filed a voluntary Chapter 7 petition. Pursuant to 11 USC §362 the voluntary petition stayed enforcement of the State Court action as against Debtor.

     C.  FITZGERALD asserts a claim against Debtor based upon the judgment in the State Court Action.  Debtor has insurance coverage acknowledged by his insurance carrier to pay a portion of the verdict.  FITZGERALD believes that due to conduct of the insurance carrier during the course of the trial in the State Court Action that FITZGERALD may be entitled to recover the entire amount of the verdict from the insurance carrier notwithstanding any limits claimed by the insurance carrier.

     D.  FITZGERALD seeks to pursue recovery of the amount awarded in the State Court Action, from Debtor's insurance carrier(s) and not from Debtor or Debtor's estate, except to the extent there is a distribution to creditors by the trustee of the estate.

     E.  Debtor makes no representations herein regarding the availability of insurance coverage for the claims of FITZGERALD referred to herein.  FITZGERALD assumes all risks that insurance coverage may be exceeded by the claims or other claims against Debtor.

     F.  The Debtor is willing to stipulate to relief from the automatic stay in favor of FITZGERALD to proceed against applicable insurance proceeds.

     **Now therefore, the parties do hereby agree and stipulate:**

2

1. The Debtor agrees to relief from the automatic stay being granted in favor of FITZGERALD to allow FITZGERALD to proceed with enforcement of the verdict arising from the State Court Action against applicable insurance proceeds only, or any other claims FITZGERALD may have against Debtor's insurance carrier, to the extent that such claims are not assets of the Chapter 7 estate.

3. FITZGERALD will hold the estate harmless against requirements by the estate insurers for the payment by the estate of any deductible or self-insured retention liability. In this regard, FITZGERALD will have the option of funding any required deductibles or self-insured retentions, litigating or dealing directly with the insurers regarding deductibles or retention requirements, or abandoning the pursuit of any and all applicable policies. Nothing herein shall be construed as a basis by an insurer to refuse to defend the estate if that insurer is otherwise obligated to do so under applicable state law.

4. If FITZGERALD fails to promptly tender to the Debtor the amount of any such deductible or self-insured retention required by the estate's insurers, the action will automatically be stayed without further Order of this Court.

5. FITZGERALD and Debtor will provide reasonable assistance to each other regarding which policies are affected by the stipulation and which insurance carriers must be notified of the action.

6. FITZGERALD may continue to conduct discovery regarding the extent of the Debtor's insurance coverage as it relates to the State Court action.

3

03/2005  16:36     8185565588          ESCALSO                          DAVID S HAGEN                   17  /80-9800          P. G
Mar 03 05 04:2                    ESCALSO                                                                           P.G

7. If any dispute arises regarding interpretation or enforcement of this Stipulation, any such dispute will be decided by the United States Bankruptcy Court and the prevailing party shall be entitled to reasonable attorney's fees and costs.

8. This Stipulation may be executed in counterparts with the same effect as if all original signatures were placed on one document, all of which together shall constitute one and the same Stipulation.

IT IS SO STIPULATED.

Dated: 3/4/05

Judith A. Descalso, Esq. Attorney for
BRENT FITZGERALD

Dated: 3.3.05

David S. Hagen, Esq. Attorney for
ANDREW W. BARCLAY

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Judith A. Descalso (SBN 103211)<br>960 Canterbury Place., Ste. 340<br>Escondido, CA 92025-3826<br>Tel: (760) 745-8380<br>Fax:(760) 860-9800<br><br>☐ Individual appearing without counsel<br>☒ Attorney for: Brent Fitzgerald | **ENTERED**<br>**MAR 2 1 2005**<br>CLERK, U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ Deputy Clerk<br><br>**FILED**<br>**MAR 2 1 2005** |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>Andrew W. Barclay<br><br>Debtor(s). | CHAPTER: 7 |
|---|---|
| | CASE NO.: LA 05-12345MT |
| | DATE:<br>TIME:<br>CTRM:<br>FLOOR: |

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362 (Action in Non-bankruptcy Forum)
## (MOVANT: Brent Fitzgerald _____)

1. The Motion was:   ☐ Contested   ☐ Uncontested   ☒ Settled by stipulation

2. The Motion affects the following non-bankruptcy case or administrative proceeding:

    Case name: Fitzgerald v. Barclay

    Docket number: GIN 030385

    Court or agency where pending: Superior Court of California, County of San Diego

3. The Motion is granted under:   ☐ 11 U.S.C. § 362(d)(1)   ☐ 11 U.S.C. § 362(d)(2)

4. As to Movant, its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is:

  a.   ☐ Terminated as to Debtor(s) and Debtor's(s') estate.

  b.   ☐ Annulled retroactively to the date of the bankruptcy petition filing.

  c.   ☒ Modified or conditioned as set forth in Exhibit A_____ to this Order.

5. Movant may proceed in the non-bankruptcy forum to final judgment (including any appeals) in accordance with applicable non-bankruptcy law.

6. **Limitations on Enforcement of Judgment:** Movant is permitted to enforce its final judgment only by (specify all that apply):

  a.   ☒ Collecting upon any available insurance in accordance with applicable non-bankruptcy law.

  b.   ☐ Proceeding against the Debtor(s) as to NON-estate property or earnings.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised May 2004*
                                                 **F 4001-1O.NA**

19

**F 4001-1O.NA**

Order on Motion for Relief from Stay (Non-bankruptcy Action) - *Page 2 of* ____

| In re                        (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| Barclay | |
| Debtor(s). | CASE NO.:  LA 05-12345MT |

7.  This Court further orders as follows:

a.  ☒  This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

b.  ☒  The 10-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

c.  ☐  The provisions set forth in the Extraordinary Relief Attachment shall also apply *(attach Optional Form F 4001-1O.ER).*

d.  ☐  See attached continuation page for additional provisions.

Dated:   5/21/05

*Newt Jigli*
_____
*UNITED STATES BANKRUPTCY JUDGE*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised May 2004

**F 4001-1O.NA**

20

F 4001-1O.NA

Order on Motion for Relief from Stay (Non-bankruptcy Action) - *Page 3 of* _____

| In re                              | (SHORT TITLE)   | CHAPTER: 7                  |
|------------------------------------|-----------------|-----------------------------|
| Barclay                            |                 |                             |
|                                    | Debtor(s).      | CASE NO.: LA 05-12345MT     |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

**TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:**

1.  You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1, that an ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (in whole or in part) was entered on *(specify date):* 3/21/05

2.  I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date):* 3/21/05

Dated:  3/21/05

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised May 2004*                    **F 4001-1O.NA**

21

1.  The Debtor agrees to relief from the automatic stay being granted in favor of FITZGERALD to allow FITZGERALD to proceed with enforcement of the verdict arising from the State Court Action against applicable insurance proceeds only, or any other claims FITZGERALD may have against Debtor's insurance carrier, to the extent that such claims are not assets of the Chapter 7 estate.

3.  FITZGERALD will hold the estate harmless against requirements by the estate insurers for the payment by the estate of any deductible or self-insured retention liability. In this regard, FITZGERALD will have the option of funding any required deductibles or self-insured retentions, litigating or dealing directly with the insurers regarding deductibles or retention requirements, or abandoning the pursuit of any and all applicable policies. Nothing herein shall be construed as a basis by an insurer to refuse to defend the estate if that insurer is otherwise obligated to do so under applicable state law.

4.  If FITZGERALD fails to promptly tender to the Debtor the amount of any such deductible or self-insured retention required by the estate's insurers, the action will automatically be stayed without further Order of this Court.

5.  FITZGERALD and Debtor will provide reasonable assistance to each other regarding which policies are affected by the stipulation and which insurance carriers must be notified of the action.

6.  FITZGERALD may continue to conduct discovery regarding the extent of the Debtor's insurance coverage as it relates to the State Court action.

EXHIBIT "A"

JOHN P. PRINGLE, TRUSTEE
6055 EAST WASHINGTON BOULEVARD
SUITE 608
LOS ANGELES, CA  90040-2466
(323) 727-9589

"FILED"

05 MAR 30 AM 10: 09

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

BY:_____DEPUTY

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| In Re<br><br>ANDREW W BARCLAY<br><br>         Debtor(s). | CASE NO. LA-05-12345-MT<br><br>REPORT OF TRUSTEE IN<br>CHAPTER 7 NO ASSET CASE |
| --- | --- |

    The undersigned, duly appointed Chapter 7 Trustee of the estate of the above-named debtor(s), reports that he has neither received any property nor paid any money on account of this estate; that he has made diligent inquiry into the whereabouts of property belonging to the estate; that he has no objections to the exemptions claimed; and that each of the assets scheduled and not claimed exempt are burdensome or of inconsequential value or are encumbered beyond value and the Trustee asserts no interest therein.  Therefore, the Trustee has not taken possession of said assets, asserts no interest in said assets, and has not and will not administer said assets which are to be abandoned in accordance with 11 USC 554(c).

    WHEREFORE, Trustee prays that his Report be approved, that he be discharged from office, and his bond exonerated, and for all other appropriate orders.

Dated: March 18, 2005

_____
JOHN P. PRINGLE, Trustee

APPROVED BY ORDER OF THE U.S. BANKRUPTCY COURT AND THE SAID ESTATE(S) IS HEREBY CLOSED

Dated: 

_____
Clerk of Court

23

7V

1
2
3
4
5
6
7

8 **IN THE SUPERIOR COURT OF CALIFORNIA,**

9 **COUNTY OF SAN DIEGO, NORTH COUNTY BRANCH**

10

11 BRENT FITZGERALD                )        Case No. GIN 030385
   an individual,                  )

12                                 )
              Plaintiff,           )        STIPULATION AND
13                                 )        PARTIAL ASSIGNMENT
   v.                              )
14                                 )
15 ANDREW W. BARCLAY,              )
   an individual                   )
16                                 )
              Defendants.          )
17 _____ )

18

19      This stipulation and partial assignment  is made and entered into by ANDREW W.

20 BARCLAY and BRENT FITZGERALD in followup to that certain stipulation entered

21 between them on March 3, 2005, attached hereto

22      IT IS THEREFORE AGREED AND STIPULATED THAT:,

23      1.    Andrew W. Barclay now and forever assigns to Brent Fitzgerald  Barclay's

24 contractual damages *only* from his chose of actions that arose from State Farm's unreasonable

25 rejection of an offer to settle, pursuant to *Crisci v. Security Insurance Co.* (1967) 66 Cal. 2d

26 425 and *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 237, limited to the right to

27

28

-1-

24

1   recover the balance of the final judgment, plus interest as accrued pursuant to law.

2       2.      That Brent Fitzgerald acknowledges that in so doing, Andrew W. Barclay has

3   retained *all* his right to pursue tortious damages from Barclay's choses of action that arise

4   from State Farm's unreasonable rejection of an offer to settle, pursuant to *Crisci v. Security*

5   *Insurance Co.* (1967) 66 Cal. 2d 425 and *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d

6   220, 237, including but not limited to damages for emotional distress, personal injury

7

8   damages and punitive damages

9   DATED: *August 4, 2005*          *Andrew W. Barclay*

10                                    ANDREW W. BARCLAY

11

12

13

14   DATED: 08|10|05          *Brent Fitzgerald*

15                                    BRENT FITZGERALD

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **FITZGERALD v. STATE FARM**                    **CASE NO.: 05CV1362L (BLM)**
   UNITED STATES DISTRICT COURT
2  SOUTHERN DISTRICT OF CALIFORNIA

3                     **PROOF OF SERVICE BY MAIL**
                       [C.C.P. §§ 1013a(3) and 2015.5b]
4
        I, KRISTINE PRAYTHER, declare as follows:
5
        I am over the age of eighteen years and not a party to the case.  I am employed in the
6  County of San Diego, California, where the mailing occurs; and my business address is 326
   East Grand Avenue, Escondido, California 92025.
7
        On **January 30, 2006**, I caused to be served the following document(s):
8
                 **PLAINTIFF'S FIRST AMENDED COMPLAINT**
9
   by placing a true copy of each document in a separate envelope addressed to each addressee,
10 respectively, as follows:

11 **Randall M. Nunn**   . . . . . . . . . . . . . . . . . . . . . . . **Via facsimile at (619) 236-9271**
   **E. Kenneth Purviance**
12 **HUGHES & NUNN**
13 **450 "B" Street, Suite 2000**                    **Attorneys for Defendant:**
   **San Diego, California 92101**                   **STATE FARM INSURANCE**
14
15 **[ X ]   BY MAIL**:  I am readily familiar with the firm's practice of collection and
   processing correspondence for mailing.  Under that practice, it would be deposited with the
16 United State Postal Service on that same day with postage thereon fully prepaid in San Diego,
   California in the ordinary course of business.  The envelope was sealed and placed for
17 collection and mailing on this date following our ordinary practices.
18
   **[   ]   BY FAX**: I personally sent to the addressee's facsimile number a true copy of the
19 above-described documents.
20
   **[   ]   BY PERSONAL SERVICE**: By personally delivering copies of the above-described
21 documents to the addressee's indicated above.
22
23      I declare under penalty of perjury under the laws of the State of California that the
   foregoing is true and correct.
24
25
26 Executed on January 30, 2006
                                      KRISTINE PRAYTHER
27
28

Proof of Service                       1                    05CV1362