UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT FITZGERALD,<br><br>  Plaintiff,<br><br>v.<br><br>STATE FARM INSURANCE COMPANY,<br><br>  Defendant. | Civil No. 05-CV-1362-L(BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [doc. #20] and DIRECTING THE FILING OF AN ANSWER TO THE FIRST AMENDED COMPLAINT** |

Defendant moves to dismiss the first amended complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and the Court finds this matter suitable for determination on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having fully considered the matters presented, the Court enters the following decision.

**Background**

Plaintiff Brent Fitzgerald brought an action in state court against Andrew W. Barclay ("Barclay") alleging Barclay was negligent with respect to a motor vehicle accident that occurred on May 17, 2003. Barclay is an insured of State Farm Insurance Company ("State

Farm") which defended Barclay in the state court action.[1] While the jury was deliberating, Fitzgerald made an offer to dismiss the pending action against Barclay, defendant's insured, in exchange for State Farm's payment of the $100,000 liability coverage plus certain court cost including all court reporter fees, jury fees, cost of preparation of an edited version of a videotaped deposition and $2,000 incurred when plaintiff's medical expert was required to return the next day in order to accommodate defendant's medical expert.  The additional costs totaled approximately $5,200.  *Id.*  Defendant refused the settlement offer.  Judgment was entered in Fitzgerald's favor and against Barclay and damages were awarded in the sum of $937,283.98, plus costs of $31,527.17, and interest.  (Exh. 2 to FAC).

Barclay's policy with State Farm has a per person liability limit of $100,000.00 which is contained on the declaration page and in the body of the insurance policy.  The policy also provides supplemental cost coverage that is in addition to the limits of liability for "court costs of any suit for damages that we defend."  (Exh. 1 to FAC).  As a result of the state court judgment, State Farm paid Fitzgerald the entire $100,000 liability limits and the full cost award of $31,527.17 under the supplemental cost coverage provision of the policy.  (FAC, ¶ 17).  Thereafter, Barclay filed a Chapter 7 bankruptcy petition in which he sought to discharge the judgment entered in Fitzgerald's favor.  Eventually Barclay and Fitzgerald entered into a stipulation which purported to assign Barclay's contractual rights against State Farm to Fitzgerald while retaining his right to seek damage based upon tort claims.

Plaintiff then brought the present action in state court, which was removed to this court, seeking to recover the portion of the judgment exceeding the policy limit on the ground that plaintiff had standing, as a judgment creditor, to recover the excess judgment under California Insurance Code §11580(b)(1).  After removal, defendant filed a motion to dismiss and plaintiff filed a motion for remand contending that diversity jurisdiction was not present.  The Court denied the motion for remand and ordered a response to defendant's motion to dismiss.  Rather

---

[1] The case was first tried to a jury in June 2004.  The jury did not reach a verdict and a mistrial was declared. (FAC ¶¶ 7, 12).  The case was heard before a newly convened jury and a verdict in plaintiff's favor returned.

than respond to the motion to dismiss, plaintiff filed a first amended complaint alleging that State Farm is obligated under California state law to pay the balance of the judgment – $837,283.98 – obtained against Barclay because State Farm had an opportunity to settle the action against Barclay for the policy limits but failed to do so.   Plaintiff's sole cause of action in the FAC alleges bad faith failure to settle the underlying case within policy limits.  Defendant again moves to dismiss with prejudice the FAC contending that the settlement offered was not within the policy limits and a claim for extra-contractual damages has not been assigned effectively to plaintiff.

## Discussion

There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. *Comunal v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658 (1958).  The duty of good faith is applicable in the insurance context. *Id.* at 659.

The duty of good faith is breached when the insurer wrongfully rejects a settlement offer within the liability limits of the policy, and there is a substantial likelihood of recovery in excess of the policy limits.   In order to be liable for bad faith refusal to accept a reasonable settlement offer, the insurer must have an opportunity to settle a claim for an amount within its policy limits. *McLaughlin v. National Union Fire Ins. Co. of Pittsburg*, 23 Cal. App.4th 1132, 1146-47, 29 Cal. Rptr.2d 559, 566-67 (1994).   More specifically, the insurer must settle within policy limits when there is substantial likelihood of recovery in excess of those limits.  The duty to settle is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble on which only the insured might lose.  An insurer that breaches its implied duty of good faith and fair dealing by unreasonably refusing to accept a settlement offer within policy limits may be held liable for the full amount of the judgment against the insured in excess of its policy limits. *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 97 Cal. Rptr. 2d 151 (2000), as modified, (July 26, 2000).

**1.     Settlement Offer Within the Policy Limits**

It is undisputed that the policy at issue had a stated liability limit of $100,000 (FAC, ¶10).

It is also undisputed that after judgment was entered, State Farm paid the entire $100,000.00 liability limits available under Barclay's insurance policy along with court costs of $31,527.17 because of the supplemental cost provision in the insurance policy. As set forth above, counsel for Fitzgerald made an offer to settle the case by dismissal of the state court action against Barclay, defendant's insured, in exchange for State Farm's payment of the $100,000 liability coverage plus certain court costs of approximately $5,200.

Plaintiff asserts that the settlement demand was within the policy limits because in addition to the $100,000 liability limit, the policy contains specific additional supplemental coverage for "court costs of any suit for damages that we defend."  But defendant argues that policy limits do not include other expenses the insurer may incur if the matter goes to judgment. In other words, defendant asserts that if the claim had settled within the $100,000 policy limit, no judgment would be entered, no cost bill would be filed and no costs would be assessed with payment made from the supplemental coverage portion of the policy. As defendant notes, "[t]he possibility may exist that State Farm will pay costs awarded to the plaintiff following judgment, but this will occur only if the case cannot be settled for the policy limit." (Dft's Memo in support at 9).  Thus, defendant argues that plaintiff's settlement demand exceeded the policy limits by demanding certain court costs beyond the stated $100,000 policy liability limitation. Notwithstanding the supplemental coverage provision in the insurance policy, defendant contends that as a result of the demand for a settlement in excess of the policy limits, there can be no showing of bad faith failure to settle the underlying case within policy limits.

Plaintiff argues, however, that State Farm's position is not consistent with accepted interpretations of insurance contracts and does not take into account a full reading of the policy. Plaintiff points to the portion of the policy providing for supplemental coverage: "In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident: 1. Court costs of any suit for damages that we defend." By this language, plaintiff contends that the policy liability limits also include supplementary cost coverage even though the provision does not specify a specific dollar amount limitation in the policy. Plaintiff also asserts that the supplemental cost coverage provision does not require that the action ends in a

judgment. Accordingly, plaintiff asserts that the supplemental coverage for courts costs of any suit for which State Farm provides its insured with a defense should be included when consideration is given to a settlement offer even when the supplemental coverage amount exceeds the liability limitation contained in the policy and there is no express dollar amount limitation in the supplemental coverage provision.

State Farm relies on *State Farm Mutual Automobile Ins. Co. v. Crane*, 217 Cal. App. 3d 1127, 266 Cal. Rptr. 422 (1990) to support its position. In *Crane*, Crane was severely injured in an auto accident in which he was a passenger. The driver was insured by State Farm. The policy limited liability for bodily injury for each person involved in an accident to $25,000. Just as the policy at issue here, the liability coverage portion of the policy in *Crane* provided:

> In addition to the limits of liability, we will pay for an insured any costs below resulting from such accident.
>
> 1. Court costs of any suit for damages.
> **2. Interest on all damages owed by an insured as the result of a judgment until we pay, offer or deposit in court the amount due under this coverage.**

*Crane*, 266 Cal. Rptr. at 423 (emphasis added).

In *Crane,* prior to any action being filed, State Farm made a settlement offer of the policy limits, *i.e.,* $25,000. The offer was rejected. State Farm then filed a declaratory judgment action seeking a ruling that it would owe no prejudgment interest on any judgment which might be awarded against its insured. The trial court granted State Farm's summary judgment motion and on appeal, the Court affirmed. The appellate court noted that "interest is assessed only when a plaintiff obtains a judgment that is more favorable than plaintiff's unaccepted offer pursuant to section 998 of the Code of Civil Procedure." *Id.* at 426. The Court also noted that State Farm offered its policy limits *before* Crane made his section 998 offer and therefore, "State Farm's offer of the policy limits was made when no section 3291 interest was conceivably due. . . Thus, if State Farm's offer of policy limits was valid, it extinguished State Farm's obligation to pay prejudgment interest, because the policy limits were the maximum then 'due under this coverage." *Id.* (citing *Farmers Alliance Mut. Ins. Co. v. Bethel*, 812 F.2d 412, 413 (8th Cir. 1987).

The facts and analysis of *Crane* are significantly different than the situation here. Most obviously, the present case refers to the first clause of the addition to the limits of liability provision, *viz*, "Court costs of any suit for damages" while the *Crane* case concerned the second clause, interest on all damages. In *Crane*, the language of the policy refers to interest owed *as a result of a judgment*. Unlike prejudgment interest, court costs of any suit for damages is not so limited in the policy in *Crane* or the present case. Here, State Farm attempts to argue that although there is a possibility that it will pay court costs awarded to the plaintiff following judgment, that payment would occur only if the case cannot be settled for the policy limit. Defendant misreads the first clause by adding "as a result of judgment" to the court cost provision. Court costs are incurred from the inception of the case in which the insurer defends the insured and certainly prior to judgment. An insured is entitled to rely on the insurance policy in expecting those costs to be paid by the insured whether the action ends in settlement or judgment. Although costs may be waived as a part of a settlement or the costs are included in a single sum that is at or below the policy limits, the language of the policy does not suggest that costs are unavailable in addition to the liability limit contained in the policy when a case settles rather than concludes by judgment. Thus, defendant's contention that costs were not due at the time of the settlement offer is without merit or that judgment is required before court costs can be paid because of the supplemental court costs provision of the policy.

Moreover, there is specific language in the policy provision concerning costs that cuts off the right to *interest* when the insurer pays, offers or deposits the amount due under the coverage that is not present in the provision for court costs. There is no such limitation in the court cost language of the policy.

For purposes of a motion to dismiss for failure to state a claim, plaintiff has established sufficiently that the offer of policy limits plus a demand for costs or a portion of the costs incurred was within the policy limits when the policy is read as a whole. A policy holder would reasonably believe court costs to be available for a settlement in addition to the liability limit of $100,000 under the supplemental costs provision of the policy.

. . .

**2.     Stipulation for Relief From Bankruptcy Stay**

Initially defendant contended that plaintiff did not have standing to seek extra-contractual relief because the implied covenant of good faith and fair dealing applies between the parties to the insurance contract. *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 941 ( 1976).   Thus, because the injured party is neither a party nor an intended beneficiary of the contract, he has no cause of action against the insurer for breach of the implied covenant based on the insurer's refusal to settle a claim.. *Id*. But plaintiff asserts that he has obtained an assignment from defendant's insured for such damages.  An insured may protect himself from an excess judgment by assigning his bad faith cause of action against the insurer to the injured party in exchange for a covenant not to execute of the insured's personal assets.  *Hamilton v. Maryland Casualty Co.*, 27 Cal. 4th 718, 732 (2002).

Here, plaintiff contends Barclay assigned his rights to Fitzgerald in the context of a stipulation for relief from Barclay's bankruptcy stay from the bankruptcy trustee.  Fitzgerald and Barclay stipulated as follows:

> FITZGERALD asserts a claim against Debtor [defendant's insured, Barclay] based upon the judgment in the State Court Action.  Debtor has insurance coverage acknowledged by his insurance carrier to pay a portion of the verdict.  FITZGERALD believes that due to conduct of the insurance carrier during the course of the trial in the State Court Action that FITZGERALD may be entitled to recover the entire amount of the verdict notwithstanding any limits claimed by the insurance carrier.
>
> . . .
>
> F.     The Debtor is willing to stipulate to relief from the automatic stay in favor of FITZGERALD to proceed against **applicable insurance proceeds**.
>
> Now therefore, the parties, do hereby agree and stipulate:
>
> 1.     The Debtor agrees to relief from the automatic stay being granted in favor of FITZGERALD to allow FITZGERALD to proceed with enforcement of the verdict arising from the State Court **against applicable insurance proceeds only, or any other claims FITZGERALD may have against Debtor's insurance carrier, to the extent that such claims are not assets of the Chapter 7 estate.**

(FAC, Exh. 4)(emphasis added).

Exhibit 6 to the FAC is a supplement to the stipulation that states:

> 2.     Andrew W. Barclay now and forever assigns to Brent Fitzgerald Barclay's

>  **contractual damages only** from his chose of action that arose from STATE FARM'S unreasonable rejection of an offer to settle . . .
>
>  3. That Brent Fitzgerald acknowledges that in so doing, Andrew W. Barclay has retained **all his rights to pursue tortious damages from Barclay's choses of action that arise** from STATE FARM'S unreasonable rejection of an offer to settle . . . .

(FAC, Exh. 6)(emphasis added).

Fitzgerald eventually obtained the release of Barclay's (the debtor) rights as set forth above against State Farm from the bankruptcy trustee.[2] Nevertheless, defendant contends that the assignment is for "contractual damages" only and not for tortious damages. State Farm argues that because excess liability is recoverable under tort law, Fitzpatrick still does not have any assignment rights to attempt to collect extra-contractual damages such as those sought here. *See Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 431 (1967); *PPG Insustries, Inc.v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 315 (1999).

An action for the insurer's breach of the covenant of good faith and fair dealing sounds in both contract and tort. *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* 15 Cal.3d 9, 18, 123 Cal.Rptr. 288, 538 P.2d 744 (1975). Defendant has not provided any authority to show that damages based upon an alleged breach of the implied covenant of good faith and fair dealing must be considered as arising under tort law only. Here, the language of the assignment provides plaintiff with the right to pursue the entire amount of the judgment entered based upon the purported breach of good faith and fair dealing, in other words, a form of expanded contract damages available under California law.

Under the terms of the assignment, Barclay retained the right to seek damages based on tort for State Farm's rejection of an offer to settle. Such tort claims could include damages

---

[2] At the time of filing its motion to dismiss the FAC, the bankruptcy trustee had not signed off on the stipulation for relief from stay or the order granting the relief. Thereafter, plaintiff went back to the bankruptcy court for the approval of the bankruptcy trustee which was given. On April 6, 2006, the Court granted plaintiff's *ex parte* application to file order of the bankruptcy court and request for judicial notice. Order filed April 6, 2006 [doc. #27].

based upon emotional distress or punitive damages.[3]  Here, plaintiff has not sought tort damages but rather the damages that flow from a breach of the covenant of good faith and fair dealing found in the insurance contract.

The Court finds that the assignment of contractual rights by Barclay to plaintiff is effective and proper.  Accordingly, defendant's motion to dismiss based upon an ineffective assignment must be denied.

## Conclusion

Based on the foregoing, **IT IS ORDERED** denying defendant's motion to dismiss.  [doc. #20].  **IT IS FURTHER ORDERED** that defendant shall file an answer to plaintiff's FAC within ten days of the filing of this Order.

**IT IS SO ORDERED.**

DATED: November 3, 2006

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

---

[3] For additional discussions concerning this topic, *see* John H. Bauman, *Emotional Distress Damages and the Tort of Insurance Bad Faith*, 46 DRAKE L. REV. 717 (1998); Robert E. Keeton, *Liability Insurance and Responsibility for Settlement*, 67 HARV. L. REV. (1954); Michael H. Cohen, Comment, *Reconstructing Breach of the Implied Covenant of Good Faith and Fair Dealing as a Tort*, 73 CAL. L. REV. 1291 (1985).