1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

BRENT FITZGERALD,

               Plaintiff,

v.

STATE FARM INSURANCE
COMPANY,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 05-CV-1362-L(BLM)

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT [doc. #52]; DENYING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ doc. #63];
and DIRECTING ENTRY OF
JUDGMENT**

18
19

    The parties have filed cross motions for summary judgment.  Having carefully considered
the arguments and evidence submitted thereto, the Court enters the following decision.

20

**BACKGROUND**[1]

21
22
23
24

    Plaintiff Brent Fitzgerald ("Fitzgerald") brought an action in state court against Andrew
W. Barclay ("Barclay")[2] alleging Barclay was negligent with respect to a motor vehicle accident
that occurred on May 17, 2003.  Barclay is an insured of defendant State Farm Insurance
Company ("State Farm" or "defendant") which defended Barclay in the state court action.  The

25
26
27

    [1]    The background of the case, although well known to the parties, is repeated here
and is substantially the same as that set forth in the Court's November 3, 2006 Order denying
defendant's motion to dismiss. [doc. #29]

28
    [2]    Barclay is not a party in this action.

05CV1362

case was tried to a jury in June 2004.  While the jury was deliberating, Fitzgerald made an offer to dismiss the pending action against Barclay, defendant's insured, in exchange for State Farm's payment of the $100,000 bodily injury liability coverage plus some but not all court costs incurred that included court reporter fees, jury fees, cost of preparation of an edited version of a videotaped deposition and $2,000 incurred when plaintiff's medical expert was required to return the next day in order to accommodate defendant's medical expert.  State Farm rejected plaintiff's settlement offer of bodily injury policy limits and $5,200 of court costs. The jury did not reach a verdict and a mistrial was declared.  (FAC, ¶¶ 7, 12).  The case was then heard before a newly convened jury and the jury found in Fitzgerald's favor and against Barclay, and damages were awarded in the sum of $937,283.98, plus costs of $31,527.17, and interest.  (Exh. 2 to FAC).

Barclay's policy with State Farm has a per person bodily injury liability limit of $100,000 which is set forth on the declaration page and in the body of the insurance policy.  The insurance policy also expressly provides supplemental cost coverage for "court costs of any suit for damages that we defend" that is in addition to the bodily injury liability limit and is not limited to a particular dollar amount. (Exh. 1 to FAC).  As a result of the state court judgment, State Farm paid Fitzgerald the entire $100,000 bodily injury liability limit and the full cost award of $31,527.17 under the supplemental cost coverage provision of the policy.  (FAC, ¶ 17). Thereafter, Barclay filed a Chapter 7 bankruptcy petition in which he sought to discharge the balance of the judgment entered in Fitzgerald's favor.  Eventually Barclay and Fitzgerald entered into a stipulation that assigned Barclay's contractual rights to Fitzgerald while Barclay retained his right to seek tort damages against State Farm for the unreasonable failure to settle within policy limits.

Fitzgerald brought the present action in state court, which State Farm removed to this Court, seeking to recover the portion of the judgment exceeding the bodily injury policy limit on the ground that plaintiff had standing, as a judgment creditor, to recover the excess judgment under California Insurance Code § 11580(b)(1).   After removal, defendant filed a motion to dismiss and plaintiff filed a motion for remand contending that diversity jurisdiction was not

05CV1362

1   present.  The Court denied the motion for remand and ordered a response to defendant's motion

2   to dismiss.  Rather than respond to the motion to dismiss, plaintiff filed a first amended

3   complaint ("FAC") alleging in the sole cause of action that State Farm is obligated under

4   California law to pay the balance of the judgment – $837,283.98 – obtained by Fitzgerald

5   against Barclay because State Farm had an opportunity to reasonably settle the action within

6   policy limits, *i.e.,* the $100,000 bodily injury limit along with certain supplemental court costs,

7   but unreasonably failed to do so.

8          Defendant moved to dismiss the FAC with prejudice contending that the settlement

9   plaintiff offered was not within the policy limits, and a claim for the full amount of the

10   underlying judgment that was in excess of the policy limit based on State Farm's wrongful

11   failure to settle had not been assigned effectively to plaintiff.  In its November 3, 2006 Order, the

12   Court denied State Farm's motion finding, for purposes of a motion to dismiss for failure to state

13   a claim, plaintiff had established that the offer of bodily injury liability limits plus a demand for

14   court costs or a portion of the costs incurred was within the policy limits when the policy was

15   read as a whole, and further, the assignment of contractual rights by Barclay to Fitzgerald

16   covered plaintiff's claim for breach of the covenant of good faith and fair dealing based on State

17   Farm's alleged unreasonable failure to settle the underlying case within policy limits.  (Order

18   filed November 3, 2006 [doc. #29]).

19          As noted above, the parties have filed cross motions for summary judgment.  State Farm

20   again contends it did not have the opportunity to accept a settlement offer for an amount within

21   the policy limits and plaintiff does not possess the right to recover the excess judgment against

22   State Farm under the assignment from Barclay to Fitzgerald.  Plaintiff argues that State Farm

23   unreasonably rejected his offer to settle the action within the policy limits and he has a valid

24   assignment to pursue the excess judgment against State Farm.

25   / / /

26   / / /

27   / / /

28   / / /

05CV1362

**DISCUSSION**

**A.      Bad Faith Claim**

       **1.      Legal Standard**

The legal basis for a bad faith claims was presented earlier in defendant's motion to dismiss; nevertheless, it will be repeated here.  There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.  *Comunal v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (1958).  The implied covenant of good faith and fair dealing and the duty of good faith are applicable in the insurance context.  *Id.* at 659.   In order to be liable for bad faith refusal to accept a reasonable settlement offer, the insurer must have an opportunity to settle a claim for an amount within its policy limits.  *McLaughlin v. National Union Fire Ins. Co. of Pittsburg*, 23 Cal. App. 4th 1132, 1146-47, 29 Cal. Rptr. 2d 559, 566-67 (1994).  Additionally, the insurer must settle within policy limits when there is substantial likelihood of recovery in excess of those limits.  *Id.*  The duty to settle is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's decision for which only the insured might suffer.  An insurer that breaches its implied covenant of good faith and fair dealing by unreasonably refusing to accept a settlement offer within policy limits will be held liable for the full amount of the judgment against the insured in excess of its policy limits. *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 97 Cal. Rptr. 2d 151 (2000), as modified, (July 26, 2000).  The California Supreme Court stated that "when 'there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of insured's interest requires the insurer to settle the claim.'" *Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 429, 58 Cal. Rptr. 13, 16 (1967)(quoting *Comunale*, 50 Cal. 2d at 659).  An insurer must give as much consideration to the financial interests of its insured as it gives to its own interests. *Id.*

/ / /

/ / /

## 2.    Settlement Offer Within the Policy Limits

It is undisputed that the declaration page of the insurance policy at issue had a stated bodily injury liability limit of $100,000. (FAC ¶10).  The policy provides in relevant part:

**Limits of Liability**

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident."  Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*.

State Farm "will pay damages for which an *insured* is legally liable up to these amounts."

(Exh. 1, Insurance Policy at 9, emphasis in original).

In addition to the $100,000 liability limitation, the insurance policy expressly provides supplemental coverage for costs incurred in litigation that is not limited by a dollar amount:

**In addition to the limits of liability**, we will pay for an insured any costs listed below resulting from such accident.

1.  Court costs of suit for damages that we defend.

(*Id.* at 8 (emphasis added)).

Defendant argues that the declaration page is clear and unambiguous:  "State Farm will only pay up to $100,000 for damages due to bodily injury to one person." (Memorandum of Points and Authorities ("MPA")  in support of State Farm's MSJ at 4-5).  In other words, State Farm contends that the bodily injury provision is the sole factor for determining the policy limit and nothing else found or provided for in the policy will modify or change that limit.  Therefore, notwithstanding any other provision(s) in the policy, defendant asserts the bodily injury limit is the full policy limit that is subject to a claim for breach of the implied covenant of good faith and fair dealing for failure to settle within policy limits.

State Farm contends that it repeatedly offered to settle the underlying case for the full bodily injury limit provided in the policy, $100,000, with plaintiff rejecting all of its offers.  Defendant further argues plaintiff never presented it with an offer that was within the policy limit, *i.e.,* $100,000, because plaintiff's settlement demand was for the $100,000 bodily injury limitation *plus* $5,200 in court costs.  Defendant concludes that plaintiff's total offer of $105,200

1   was in excess of the bodily injury policy limit, notwithstanding the supplemental coverage

2   provision also provided in the insurance policy; therefore, there can be no showing of bad faith

3   based on an unreasonable failure to settle the underlying case within policy limits on the part of

4   State Farm.

5        But plaintiff asserts he made an offer to settle the case by dismissal of the state court

6   action against Barclay, defendant's insured, in exchange for State Farm's payment of the

7   $100,000 bodily injury liability coverage plus certain court costs of approximately $5,200 which

8   also were expressly provided for in the policy:  State Farm will pay for "court costs of any suit

9   for damages that we defend."  (Exh. 1, Insurance Policy at 8).  Plaintiff contends that his

10  settlement demand was within policy limits when the $100,000 bodily injury limit is read in

11  conjunction with the supplemental cost provision in the policy because the specific supplemental

12  coverage for "court costs of any suit for damages that we defend" is not limited to a particular

13  dollar amount.  Accordingly, plaintiff asserts that because his offer to settle the case by

14  accepting the bodily injury limit and certain reduced court costs, *i.e.,* an amount less than

15  plaintiff had incurred and that were expressly available under the supplemental coverage

16  provision of the policy, State Farm had a duty to settle the action for $105,200.  Because the

17  offer was within policy limits and was a reasonable offer of compromise particularly when

18  considering the risk of a damage award greatly in excess of the policy limits, plaintiff argues

19  State Farm breached the covenant of good faith and fair dealing subjecting it to payment of the

20  excess judgment when it refused plaintiff's reasonable settlement offer.

21       Because neither party accepted the other's settlement offers, the underlying case went to

22  the jury and as noted above, judgment was entered in plaintiff's favor for $937,283.98, plus

23  costs of $31,527.17, and interest.  State Farm paid the entire $100,000.00 bodily injury liability

24  limit available under Barclay's insurance policy plus the full amount of allowable court costs of

25  $31,527.17 as required under the terms of the policy.  It is undisputed that had State Farm not

26  paid the full amount of the court costs incurred after judgment, it would have been in breach of

27  the insurance contract.

28       But State Farm argues that plaintiff is attempting to conflate the bodily injury provision

1   with the supplemental costs provision in determining whether the settlement offer was within

2   policy limits.  In other words, State Farm asserts the supplemental cost provision cannot increase

3   or decrease the bodily injury amount that is set forth in the policy, *i.e.*, the policy states that the

4   bodily injury liability limit is $100,000, not $105,200.  Thus, defendant concludes plaintiff never

5   made an offer within policy limits and defendant did not unreasonably refuse to settle the action.

6   　　　State Farm's argument that plaintiff is attempting to increase the bodily injury liability

7   limit is without merit.  Plaintiff is seeking the full benefits offered in the insurance policy,

8   namely, the bodily injury liability limit plus supplemental court costs in his settlement offer.  By

9   its very terms, the supplemental court cost provision is in addition to and is not a part of the

10  bodily injury liability limit.  The bodily injury limit and the court costs are, *inter alia*, the

11  benefits the insurer provided to the insured in the policy.  As noted above, had defendant only

12  paid the bodily injury limit and not paid the full amount of the court costs after judgment, it

13  would have been in breach of the insurance policy.  Thus, defendant recognizes that post-

14  judgment, plaintiff sought and received the benefits provided for in the policy.[3]

15  　　　Further, defendant does not, and cannot, argue its post-judgment  payment of the

16  $31,527.17 in court costs somehow increased the policy's bodily injury liability limit to

17  $131,527.17.  As a result, defendant must acknowledge that court costs are provided for in the

18  policy, are in addition to rather than a part of the bodily injury liability limit, and do not increase

19  the bodily injury liability limit.  Thus, defendant improperly argues here that plaintiff's proposed

20  settlement offer improperly increased the bodily injury liability limit thereby protecting State

21  Farm from the payment of the full amount of the judgment for breach of the covenant of good

22  faith and fair dealing.

23  　　　Public policy also supports plaintiff's position.  When obtaining insurance coverage, an

24  insured considers the full benefits a policy offers and not merely the bodily injury limitation as

25  the full benefit an insurance policy provides.  As a result, an insured has a reasonable

26  expectation that he/she will receive the full measure of protection under the policy when that

27  _____

28  　　　[3]　　But if a defendant breaches the covenant of good faith and fair dealing, plaintiff
    may obtain any excess judgment based upon wrongful failure to settle the case.

05CV1362

1   policy is read as a whole.  *See Crisci,* 66 Cal. 2d at 434 ("Among the considerations in

2   purchasing liability insurance, as insurers are well aware, is the peace of mind and security it

3   will provide in the event of an accidental loss . . ..).

4          Further, Insurers assume a fiduciary-like duty when an insured relinquishes control of

5   litigation to the insurance company.  *Cavanaugh Bros. v. General Accident Fire & Life*

6   *Assurance Corp.*, 79 N.H. 186 (1919) ("[W]hen the defendant assumed control of the . . . claim,

7   it then and there became its duty to do what the average man would do in a similar situation.")

8   This duty to the insured does not require an insurer to accept an excessive settlement demand.

9   Nevertheless, an insurer has a duty to accept a settlement offer within policy limits provided in

10  the policy and not only within a particular policy provision that limits payment, *e.g.,* bodily

11  injury liability limits, when the offer is a reasonable compromise of the litigation, a risk exists of

12  a judgment in excess of the policy limits, and court costs are expressly provided for in the

13  policy.

14         Defendant argues, however, that it would never be able to evaluate whether a settlement

15  proposal is reasonable if court costs are included in the proposal before the end of the litigation

16  when those costs are itemized.  The precise amount of court costs may not be specifically

17  detailed for defendant to consider in evaluating a settlement offer of the bodily injury liability

18  limit plus costs.  Nevertheless, when the insurance policy, which defendant drafted, does not

19  limit the amount of costs it will be liable for after judgment is entered, defendant will likely

20  know or have the ability to determine the plaintiff's costs within a reasonable margin at a point

21  prior to judgment.   Such costs are not purely speculative but instead are sufficiently

22  ascertainable to determine whether a settlement offer by plaintiff is a reasonable compromise of

23  the litigation during the litigation.

24         Plaintiff has established that the offer of the bodily injury liability limit plus a demand for

25  costs or a portion of the costs incurred was within the policy limits when the policy is read as a

26  whole.  A policy holder would reasonably believe court costs to be available for a settlement

27  offer under the supplemental costs provision of the policy which would be in addition to the

28  bodily injury liability limit of $100,000.  Further, an insurer's failure to accept a settlement offer

of the bodily injury limit plus court costs, when those costs are specifically provided for in the policy and the settlement offer is a reasonable compromise to the litigation, will cause the insurer to be liable for the full underlying judgment.[4]

Having carefully reviewed the law and facts presented, the Court will grant plaintiff's motion for summary judgment on his breach of the covenant of good faith and fair dealing claim based on State Farm's unreasonable failure to settle within policy limits.

**B.   Assignment of Contract Claims for Breach of Good Faith and Fair Dealing**

State Farm argues that plaintiff has no standing to seek the full amount of the underlying judgment based on State Farm's unreasonable refusal to settle, because Barclay, State Farm's insured in the underlying action, only assigned his right to pursue contract claims and not his right to pursue tort claims against State Farm to Fitzgerald. Plaintiff asserts, however, that Barclay properly assigned his contract rights to Fitzgerald to collect an excess judgment based upon State Farm's unreasonable failure to settle within the policy limits. Fitzgerald and Barclay stipulated as follows:

> FITZGERALD asserts a claim against Debtor [defendant's insured, Barclay] based upon the judgment in the State Court Action. Debtor has insurance coverage acknowledged by his insurance carrier to pay a portion of the verdict. FITZGERALD believes that due to conduct of the insurance carrier during the course of the trial in the State Court Action that FITZGERALD may be entitled to recover the entire amount of the verdict notwithstanding any limits claimed by the insurance carrier.
> . . .
> F.   The Debtor is willing to stipulate to relief from the automatic stay in favor of FITZGERALD to proceed against **applicable insurance proceeds**.

> Now therefore, the parties, do hereby agree and stipulate:

> 1.   The Debtor agrees to relief from the automatic stay being granted in favor of FITZGERALD to allow FITZGERALD to proceed with enforcement of the verdict arising from the State Court **against applicable insurance proceeds only, or any other claims FITZGERALD may have against Debtor's insurance carrier, to the extent that such claims are not assets of the Chapter 7 estate.**

---

[4]   The Court notes that defendant does not argue that the settlement offer was unreasonable or that there was not a substantial likelihood of a recovery in excess of policy limits.

05CV1362

1    (FAC, Exh. 4)(emphasis added).

2          Exhibit 6 to the FAC is a supplement to the stipulation that states:

3               2.     Andrew W. Barclay now and forever assigns to Brent Fitzgerald Barclay's
                       **contractual damages only** from his chose of action that arose from STATE
4                      FARM'S unreasonable rejection of an offer to settle . . .

5               3.     That Brent Fitzgerald acknowledges that in so doing, Andrew W. Barclay
                       has retained **all his rights to pursue tortious damages from Barclay's**
6                      **choses of action that arise** from STATE FARM'S unreasonable rejection
                       of an offer to settle . . . .
7

8    (FAC, Exh. 6)(emphasis added).

9          Fitzgerald eventually obtained the release of Barclay's (the debtor in bankruptcy) rights

10   as set forth above against State Farm from the bankruptcy trustee.  Based upon the assignment of

11   "contractual damages" only and not tortious damages,[5] State Farm argues that because excess

12   liability arises under the duty of good faith and fair dealing and is recoverable only under tort

13   law, Fitzgerald still does not have any assignment rights to attempt to collect the full amount of

14   the judgment entered in the underlying action based on State Farm's unreasonable refusal to

15   settle.   Further, because plaintiff obtained the benefit of the contract, –  the $100,000 bodily

16   injury limit plus court costs – State Farm asserts there are no additional contract claims available

17   which would include any claim for excess judgment based on breach of the covenant of good

18   faith and fair dealing.

19         As discussed earlier, breach of the covenant of good faith and fair dealing is an implied

20   contractual provision in every contract "that neither party will do anything which will injure the

21   right of the other to receive the benefits of the agreement . . . .".  . *Crisci*, 66 Cal. 2d at 429;

22   *Foley v. Interactive Data Corp*., 47 Cal.3d 654, 683 (1988)(the covenant of good faith and fair

23   dealing is implied in all contracts); RESTATEMENT (SECOND) OF CONTRACTS, § 205 ("Every

24   contract imposes upon each party a duty of good faith and fair dealing in its performance and its

25   enforcement.").  "Where a party's action for breach of the covenant of good faith and fair dealing

26   does not sound in tort, the action is just another 'garden variety breach of contract' action . . . ."

27

28          [5]       Tort victims may recover all consequential damages flowing from the wrongful act.

*Thompson Pacific Const., Inc. v. City of Sunnyvale*, 155 Cal. App. 4th 525, 66 Cal. Rptr. 3d 175 (2007)(citing *California Fair Plan Assn. v. Politi* 220 Cal. App. 3d 1612, 1619, 270 Cal.Rptr. 243 (1990), quoting *Liberty Mut. Ins. Co. v. Altfillisch Constr. Co.* 70 Cal. App. 3d 789, 797, 139 Cal. Rptr. 91 (1977)) .

As noted above, the implied covenant of good faith and fair dealing is an additional contractual provision whose breach is a breach of contract; however, an action for an insurer's breach of the covenant of good faith and fair dealing sounds in both contract and tort. *Crisci*, 66 Cal. 2d at 431 (the cause of action for unreasonable failure to settle is the breach of the implied covenant of good faith and fair dealing – a breach that would sound in both tort and contract). Courts have expanded tort remedies for the breach of the covenant of good faith and fair dealing in the insurance context based on the special relationship that exists between an insured and insurer. "Absent such a 'special relationship,' however, courts have been reluctant to recognize tort remedies to enforce the norms of good faith and fair dealing in ordinary commercial contracts." Michael H. Cohen, Comment, *Reconstructing Breach of the Implied Covenant of Good Faith and Fair Dealing as a Tort*, 73 CAL. L. REV. 1291, 1293 (1985).

Fitzgerald received an assignment of contract rights from Barclay with Barclay retaining his right to seek tort damages against State Farm. As previously discussed, breach of the implied covenant of good faith and fair dealing is a "garden variety breach of contract." Defendant has not provided any authority to show that damages based upon an alleged breach of the implied covenant of good faith and fair dealing *must* be considered as arising only under tort law in the insurance context. Electing to forego tort damages does not eliminate contract damages for breach of the covenant of good faith and fair dealing.[6]   Indeed, the *Crisi* court noted that "an

---

[6]      As the *Foley* Court explained:

Because the covenant [of good faith and fair dealing] is a contract term, however, compensation for its breach has almost always been limited to contract rather than tort remedies. As to the scope of the covenant, "'[t]he precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes.'" *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal. 3d 809, 818. Initially, the concept of a duty of good faith developed in contract law as "a kind of 'safety valve' to which judges may turn to fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language." (Summers, The General Duty of Good Faith-Its Recognition

action of the type involved here sounds in both contract and tort and that 'where a case sounds both in contract and tort the plaintiff will ordinarily have freedom of election between an action of tort and one of contract.'" *Crisi,* 66 Cal. 2d at 432 (quoting *Comunale,* 50 Cal. 2d at 663 (citing *Eads v. Marks*, 39 Cal. 2d 807, 811 (1952)).

Under the terms of the assignment, Barclay retained the right to seek tort damages for State Farm's unreasonable rejection of an offer to settle within the policy limits.[7] Fitzgerald has not sought tort damages. Instead, under the language of the assignment, Fitzgerald has been assigned the contractual right to pursue the entire amount of the judgment entered in the underlying case based upon State Farm's breach of the covenant of good faith and fair dealing caused by its unreasonable refusal to settle within the policy limits.

The Court finds, as a matter of law, that the assignment of contractual rights here includes plaintiff's right to seek the full amount of the judgment for State Farm's unreasonable refusal to settle within policy limits. Accordingly, plaintiff's motion for summary judgment on this claim is granted and defendant's motion for summary judgment premised upon an ineffective assignment of claim is denied.

## CONCLUSION

The Court finds and concludes as a matter of law that State Farm breached the implied covenant of good faith and fair dealing by failing to settle the underlying action within policy limits and the assignment of Barclay's contractual rights to plaintiff was effective and included

---

and Conceptualization 67 CORNELL L.REV. 810, 812, fn. omitted (1982) ; *see also* Burton, *supra*, 94 HARV.L.REV. 369, 371 ["the courts employ the good faith doctrine to effectuate the intentions of parties, or to protect their reasonable expectations" (fn. omitted) ].) As a contract concept, breach of the duty led to imposition of contract damages determined by the nature of the breach and standard contract principles.

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684, 254 Cal. Rptr. 211 (1988).

[7] Such tort claims could include punitive damages or damages based upon emotional distress. For additional discussions concerning this topic, *see* John H. Bauman, *Emotional Distress Damages and the Tort of Insurance Bad Faith*, 46 DRAKE L. REV. 717 (1998); Robert E. Keeton, *Liability Insurance and Responsibility for Settlement*, 67 HARV. L. REV. (1954); Michael H. Cohen, Comment, *Reconstructing Breach of the Implied Covenant of Good Faith and Fair Dealing as a Tort*, 73 CAL. L. REV. 1291 (1985).

the right to seek the full amount of the judgment for State Farm's breach.  Accordingly, **IT IS**

**HEREBY ORDERED**:

      1.      **GRANTING** plaintiff's motion for summary judgment [doc. #52];

      2.      **DENYING** defendant's motion for summary judgment [doc. #63]; and

      3.      Directing the Clerk of the Court to enter judgment in accordance with this Order.

      **IT IS SO ORDERED.**

DATED: January 11, 2008

M. James Lorenz
United States District Court Judge

COPY TO:

HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

05CV1362